Good morning, may it please the Court. My name is Susan E. Hill, and I represent the petitioner, Mr. Romero-Ochoa. Mr. Romero-Ochoa was determined to lack good moral character. That finding, however, was not predicated upon his conduct or his actions, which historically have been a large basis for a good moral character finding. Instead, it was predicated upon application of subsection F7 of Section 101 of the Immigration and Nationality Act. That statute relates to good moral character. It explicitly lists numerous instances where a person will have been found to be lacking good moral character. But this particular subsection is not related at all to conduct or actions. Instead, it's related simply to the amount of time that the person has been incarcerated as a result of a conviction. Well, isn't it rational to draw, or for Congress to draw, an inference about moral character from the amount of time? No, Your Honor. Mr. Romero contends that it's not. Why not? Because, yes, Your Honor, that's because unlike the federal criminal system, which has a uniform system of sentencing guidelines and a uniform system of early release and parole, this is left to the myriad state, local, and other jurisdictions. But that's true, for example, the definition of aggravated felony that plays out throughout the immigration and criminal statutes, i.e., there's a definition that depends on both substance but also the amount of time the person, say, serves. And that differs all over the place. If I understand your question, yes, Your Honor. However, as you did point out, it is based in part upon conduct. Here the inherent finding for good moral character is and should be based upon a person's conduct. Is this person's conduct and actions someone that we want to remain in our society or to join our society? Historically, that is how the good moral character definition, or not definition, but how good moral character was determined. But the problem is, I mean, they call it good moral character, but suppose they didn't call it that. Suppose they just said anybody who serves more than 180 days in prison can't get cancellation of removal. That's not what the statutes say, though, Your Honor. In the system, it does. But that's functionally what it says. It says it's in the statute. If it was a regulation, I think it would be different. But since it's in the statute, that's functionally what it says. I understand, yes. If it were in the regulations, it would be different. But in the statute, it's arbitrary because it does leave it up to the various jurisdictions, whereas, as you pointed out with aggravated felony, it does have a minimal requirement of conduct. It still leaves it up to the various jurisdictions. I'm sorry? But it still leaves it up to the various jurisdictions because it has a time component. Yes, and the time component is inherently arbitrary and irrational because that time component is not related at all to conduct. It's not related to good moral character. For instance, if a state … Now, I'm saying that the aggravated felony definition, various of them do have a time period in them. They do have a time period plus conduct. So they vary all over the lot in terms of nationally, in terms of how that state treats that crime. In terms of how the state treats the crime, but at least there's a minimum component of conduct that is being looked at. It is a starting point, a foundation, whereas this is something that is just arbitrary, which is the amount of time that a person spends incarcerated. For example, some states have budget constraints, or they might have prison overcrowding, and they will release people early. That has nothing to do with good moral character. Because there's no rational basis for limiting good moral character … Is that the question? It's not the question of whether someone with bad moral character might get a break under this. What would be an example of someone with good moral character who would get sentenced to six months? A person with good moral character … Well, the yardstick that is being used is the amount of time that is being sentenced, and that is exactly what Mr. Romero complains against. I'm at a loss. I can't imagine, maybe you'll give me a real-life example, of where a judge would sentence someone to six months or more in prison, believing that they had good moral character. Well, in that instance, Your Honor, it is in front of … For the example that I envision, it is in front of a state court who is not considering good moral character for immigration purposes at that time. As I pointed out, there's many, many jurisdictions. Some jurisdictions are a lot tougher on certain conduct and offenses than others are. And if you're going to be applying a uniform system as in immigration, everyone should be examined on an equal basis. Am I right you don't have an example? I don't have a specific example, but I could imagine a person with what perhaps an immigration judge may consider to be a minor offense had earlier gone in front of a state court judge, and that judge perhaps having a bad day that day was just not in a good mood and perhaps sentenced that person to an excessive amount of time. What were the facts of your client's case? My client had … He was on medication for extensive high blood pressure and diabetes, and I believe he mixed some alcohol with it inadvertently,  and unfortunately he did end up killing someone in vehicular manslaughter. He had no intent. The conduct is not anything that renders him inadmissible. It's nothing that would render him deportable if deportability were a subject. It's not a crime involving moral turpitude. Was this a guilty plea or a jury? He was a guilty plea. And what did he allecute in terms of him imbibing alcohol? I'm sorry, what did he? What did he say regarding his taking alcohol? I believe he … I don't recall exactly what he stated to the judge, but I believe he admitted it was a mistake. In the plea agreement or the plea documents, he did not go into much detail, but he stated that he did hit a person without the intent and basically that it was an accident. I mean, someone who, without intent to kill, imbibes enough alcohol as to impair their driving is nonetheless, in the eyes, I think, of Congress and most sensible people, acting with bad moral character, because we all know that one of the primary causes of death in the United States is drunken drivers. So I'm not understanding how you would be suggesting that your client had anything other than bad moral character or that the judge wasn't well within his prerogative to sentence him to more than six months or that that's not an example of exactly what Congress had in mind. Well, in Mr. Romero's case, he didn't have the benefit of a judge looking at a specific … an immigration judge looking at a specific conduct to determine whether it is or is not. Was there an alternative holding? No? An alternative holding in this case? In other words, the IHA simply said it was 180 days at standard. Yes, the judge did not rely on any other grounds for … He didn't say because it was … I mean, I note that for purposes of … Later in the same section, it says, for purposes of 1182A2E, which is, I guess, different, serious criminal offense means any crime of reckless driving or driving while intoxicated or under the influence of alcohol or of prohibited substances, if such crime involves personal injury to another. So, at least for certain purposes under the statute, without regard to the 180 days, he was still committed a serious crime. It's unknown because he didn't have the benefit of an immigration judge making that determination. Is your complaint with the 180-day cutoff? In other words, if it were a longer period, you would think it would … Like if it were, let's say, 10 years, you would think it was okay? Or are you … You just think that there can be no arbitrary line drawn whatsoever? Our argument is with a line being drawn, not with the number of days or the number of years, that it allows the adjudicator no chance to look at the specific conduct and make a determination, that it takes it out of the hands of the adjudicator, and there is no rational basis for doing so. To me, the rational basis would be let's save our judges the hassle of having to make an individualized examination of every single one of these convictions that might come before them. Let's pick a sensible number that's long enough so that we know it's going to capture, in the vast majority of cases, as Judge Rakoff was saying, people who really do have bad moral character, and just as a matter of administrative convenience. Why isn't that a rational reason to draw the line somewhere? Well, because due process entitles a person to having an individualized determination of their case. And this cutoff date is not related to any kind of minimum conduct, so I believe that due process requires an individualized determination of a person's moral character. Okay, you're about out of time, so you can have a minute in rebuttal. Thank you. Good morning, Your Honors. May it please the Court, John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, unless this Court has any questions, the Government will rest on the arguments in our brief. Well, why doesn't the Petitioner have a due process right of some sort to have an individualized examination of the circumstances of his case? Well, Your Honor, I think that the relevant question here is whether the Congress made a rational decision when it set a line, and they set the line here at 180 days. And I think it's also important to consider that this is not quite the line that she describes. Certainly anyone with a sentence greater than 180 days or a period of incarceration greater than 180 days has been found to have exceeded the line. But even if there's less than 180 days here, they can still be found to have a moral character that is not good. They can fill and meet that statutory requirement for cancellation of removal. That's a little weird about the statute. If it had just said, if you have more than 180 days, you can't get this relief, it would seem that Congress is prerogative. And the only thing odd here is that they sort of used it as a definition of something else, i.e., what's not good moral character. I don't know whether that makes any difference, but they didn't take it straight on. They took it as a personification of a different clause. Does that make any difference? Do we have to look at the other clause then and say, well, do these things match up? Well, I think what we need to look at is how the agency typically treats this question of good moral character. Now, in the voluntary departure context, it's typically a question of two things. Have you been convicted of a crime, and have you paid your taxes? Unless there's something special in the record that comes up, those are the two questions that an immigrant's attorney will ask to establish that they meet the good moral character for voluntary departure. So here the question is, have they been convicted? Yes. Congress has stepped in and said, okay, we're going to, for administrative convenience could be one reason. Another could be that it's a certain level of culpability that we know for sure that we don't think this, that Congress has said, we don't think this will meet the requirement. We can't imagine a case where greater than 180 days will. So what you're saying is Congress said, okay, anyone who gets sentenced, a real sentence that he serves, not 180 days or more, must in the overwhelming majority of cases, if not all, have bad moral character. There may be cases of people who serve less who also have bad moral character, but that has to be evaluated on an individualized basis because we can't make the same presumption that we could make in the 60-day case. That's perfectly consistent, is it not? Exactly, Your Honor. That's the government's position. That's the way that we view the statute, and that's the way that we view Congress's approach to the statute. And I'm not sure that we completely answered your question, Judge Berzon, about the definition of good moral character, but in the cancellation or removal statute, that's where Congress set the requirement for good moral character. The only definition that Congress provided to that was only a definition in part, and that is the limitation of 180 days. So that's not the sole definition of good moral character. The agency was given the prerogative of defining the remaining fact. I thought that's a bunch of other stuff. No person shall be found to have good moral character, who was a habitual drunkard, who was, what else, had drug convictions, who was a legal gambler, who gave false testimony, or who had been confined to a penal institution for more than 180 days. Right? It's all a bunch of stuff. There is, Your Honor, but it's not fully defined. And the rest of it's substantive. That's the only difference. The rest of it has some substance to it. It also says anybody who's been convicted of an aggravated felony, and anybody who's a Nazi seems to be the rest of it. Certainly, Your Honor. But here we're talking about only the sentence, the period of incarceration and the timeline for 180 days. And there's a rational basis for Congress to have set that line. And so we'd ask this Court to find that the statute does not violate even the actual law. A more peculiar part of this provision, which she isn't challenging, is that it applies to when the sentence was served rather than to when the person was convicted. Did the offense that led to the sentence, that seems really quite peculiar. It is unusual, Your Honor. I don't think it's the only statute that relies on an actual period of confinement. 1182A2B also relies on the period of confinement. But you are correct that the majority of the others are geared towards the actual sentence. The sentence in the criminal court. Well, when the, insofar as you have a time limit, and you're using the sentence as a proxy for the seriousness of the actions, you'd think you'd be concerned about the actions, not the period of confinement. I can't just tell you why somebody has bad moral character because he happens to be in prison for something that happened ten years before. The only thing that I'd say about that, Your Honor, is that to the extent that their character in prison reflects upon the period of time that they spend, whether they get time off for good behavior or however the state characterizes that sort of a determination, that could come into play as well. Anyway, it's interesting, but it's not this case. You mentioned this 1182A2B. I don't have that in front of me, so I'm not sure what it says. But are there other provisions you can think of in the immigration context where Congress has used either the length of sentence or the period of confinement as a stand-in for some other characteristic? I didn't catch the last part of that, Your Honor. You said the period of confinement or what? Or the length of sentence. Yes, Your Honor, there are five of them that we listed in the brief, and I think there are others also. The crime involving moral turpitude is 1227A2A1, and that's a crime of moral turpitude in whether they're deportable if a sentence of greater than one year has been imposed. The one that I mentioned, 1182A2B, is inadmissibility for two or more criminal convictions if they're confined for greater than five years. So that's a question of inadmissibility. The one that's similar to this one, 1182A2A2, is exceptions to inadmissibility on criminal grounds if they're not sentenced to greater than six months. And I think that's similar in character to this one, which is more or less that you've got an inadmissibility problem on criminal grounds based just on the conviction. Just like here, you have a moral character problem that's based solely on the conviction, but Congress has said, okay, we'll give you a mulligan if you have, in the case of 1182, a sentence less than six months, and in the case of good moral character, if you have a period of incarceration less than six months. It's just a way of saying we'll give you, you might be worthy of an exception. Based on that, we'll give it to the immigration judge in the case of good moral character. So then the immigration judge can evaluate the actual character of the individual, the actual crime, and what it says about the individual's character. A few others would be 8 U.S.C. 1226C1, involving mandatory detention, and all these are listed in our brief as well. And then 8 U.S.C. 1231B3B, where we're talking about withholding and removal, and whether it's a particularly serious crime for an aggravated felony with a sentence of greater than five years. So this is a routine mechanism that Congress has used of establishing a dividing line that's based on either the sentence imposed or the period of incarceration. If there are no other questions, Your Honor, I just ask this Court to deny the decision for you. Thank you. We have one minute in rebuttal. Thank you, Your Honors. Just briefly, I'd like to point out that most of the statutes that were cited in the Respondent's Brief, again, are based on specific conduct plus the limiting sentence. And if we're talking about inadmissibility or detention or deportability, that's a different matter than the whole question of a person's good moral character. And I submit with that. Thank you very much. Thank you to both counsel. The case of Romero v. Ochoa. Romero Ochoa v. Halter is submitted.
judges: Rakoff, Berzon, Watford